TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
VALERIE L. MAKAREWICZ (Cal. Bar No. 229637)
Assistant United States Attorney
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0756
     Facsimile: (213) 894-6269
     E-mail:    Valerie.makarewicz@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

                    UNITED STATES DISTRICT COURT

                FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,          No. CR 18-00288(A)-SVW-(2)

          Plaintiff,               PLEA AGREEMENT FOR DEFENDANT
                                   GARY JIZMEJIAN
               v.

ROSHANAK KHADEM, GARY JIZMEJIAN,
ROBERTO MARIANO, MARINA
SARKISYAN, and LUCINE
ILANGEZYAN,

          Defendant.


     1.   This constitutes the plea agreement between defendant GARY

JIZMEJIAN ("defendant") and the United States Attorney's Office for

the Central District of California (the "USAO") in the above-

captioned case.  This agreement is limited to the USAO and cannot

bind any other federal, state, local, or foreign prosecuting,

enforcement, administrative, or regulatory authorities.

                    DEFENDANT'S OBLIGATIONS

     2.   Defendant agrees to:

a.   Give up the right to indictment by a grand jury and, at the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to a single-count first superseding information in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with Use of a Facility in Interstate and Foreign Commerce in Aid of Unlawful Activity, in violation of Title 18, United States Code, § 1952(a)(3).

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.   Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

h.   Agree to and not oppose the imposition of a criminal fine of at least $75,000.

i.   At or before the time of sentencing, make a prejudgment payment of the fine by delivering a certified check or money order to the Fiscal Clerk of the Court in the amount of $75,000 to be applied to satisfy defendant's anticipated criminal debt.

2

Payments may be made to the Clerk, United States District Court, Fiscal Department, 255 East Temple Street, Room 1178, Los Angeles, California 90012.

i.   Defendant agrees that any and all criminal debt ordered by the Court will be due in full and immediately.  The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

ii.   Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all of the documents requested therein, to the USAO by either email at usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial Litigation Section at 300 North Los Angeles Street, Suite 7516, Los Angeles, CA 90012.  Defendant agrees that defendant's ability to pay criminal debt shall be assessed based on the completed Financial Disclosure Statement and all required supporting documents, as well as other relevant information relating to ability to pay.

iii. Authorize the USAO to obtain a credit report upon returning a signed copy of this plea agreement.

iv.   Consent to the USAO inspecting and copying all of defendant's financial documents and financial information held by the United States Probation and Pretrial Services Office.

j.   Agree that all court appearances, including his change of plea hearing and sentencing hearing, may proceed by video-teleconference ("VTC") or telephone, if VTC is not reasonably available, so long as such appearances are authorized by Order of the

1    Chief Judge No. 20-097, 20-043, 21-073, or another order, rule, or

2    statute.  Defendant understands that, under the Constitution, the

3    United States Code, the Federal Rules of Criminal Procedure

4    (including Rules 11, 32, and 43), he may have the right to be

5    physically present at these hearings.  Defendant understands that

6    right and, after consulting with counsel, voluntarily agrees to waive

7    it and to proceed remotely.  Defense counsel also joins in this

8    consent, agreement, and waiver.  Specifically, this agreement

9    includes, but is not limited to, the following:

10                  i.   Defendant consents under Section 15002(b) of the

11   CARES Act to proceed with his change of plea hearing by VTC or

12   telephone, if VTC is not reasonably available.

13                  ii.  Defendant consents under Section 15002(b) of the

14   CARES Act to proceed with his sentencing hearing by VTC or telephone,

15   if VTC is not reasonably available.

16                  iii. Defendant consents under 18 U.S.C. § 3148 and

17   Section 15002(b) of the CARES Act to proceed with any hearing

18   regarding alleged violations of the conditions of pre-trial release

19   by VTC or telephone, if VTC is not reasonably available.

20                        THE USAO'S OBLIGATIONS

21       3.   The USAO agrees to:

22            a.   Not contest facts agreed to in this agreement.

23            b.   Abide by all agreements regarding sentencing contained

24   in this agreement.

25            c.   At the time of sentencing, move to dismiss the

26   indictment and first superseding indictment as against defendant.

27   Defendant agrees, however, that at the time of sentencing the Court

28   may consider any dismissed charges in determining the applicable

                                  4

Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

d.    At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

e.    At the time of sentencing, recommend that the criminal fine be no more than $75,000.

<u>NATURE OF THE OFFENSE</u>

4.    Defendant understands that for defendant to be guilty of the crime charged in the superseding information, that is, Use of a Facility in Interstate and Foreign Commerce in Aid of Unlawful Activity, in violation of Title 18, United States Code, § 1952(a)(3), the following must be true:

a.    Defendant used the telephone in interstate commerce with the intent to promote, manage, establish, or carry on, or facilitate the promotion, management, establishment or carrying on of unlawful activity under state law, that is, commercial bribery in violation of California Penal Code § 641.3(a); and

b.    Second, after doing so, defendant performed a specific act in furtherance of the commercial bribery violation.

5.    Defendant understands that for a person to be guilty of commercial bribery, in violation of California Penal Code § 641.3(a), the following must be true:

a.    First, the person was an employee who solicited, accepted, or agreed to accept money or any thing of value from an

individual other than his employer or other than in trust for the employer;

      b. Second, the person accepted the money without his employer's knowledge or consent, in return for using or agreeing to use his position for the benefit of that other individual;

      c. Third, the person acted corruptly, that is, with specific intent to injure or defraud his employer; and

      d. Fourth, the amount accepted by the person from the other individual was more than $250.

<u>PENALTIES AND RESTITUTION</u>

6. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1952(a)(3), is: 5 years' imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

7. Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

8. Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm,

the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

9.   Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his conviction on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is automatic removal from the United States.

1

FACTUAL BASIS

2    10.  Defendant admits that defendant is, in fact, guilty of the

3  offense to which defendant is agreeing to plead guilty.  Defendant

4  and the USAO agree to the statement of facts provided below and agree

5  that this statement of facts is sufficient to support a plea of

6  guilty to the charge described in this agreement and to establish the

7  Sentencing Guidelines factors set forth in paragraph 1312 below but

8  is not meant to be a complete recitation of all facts relevant to the

9  underlying criminal conduct or all facts known to either party that

10  relate to that conduct:

11    At all relevant times:  Anthem Blue Cross ("Anthem") was a

12  health care benefit programs, as defined by Title 18, United States

13  Code, Section 24(b); defendant was a Senior Investigator in Anthem's

14  Special Investigations Unit; Roshanak Khadem ("Khadem") was the owner

15  of R&R Med Spa; and Khadem submitted health insurance claims to

16  Anthem for payment for services allegedly provided by doctors

17  affiliated with Khadem and R&R Med Spa.

18    Beginning no later than in or around January 2010, and

19  continuing until in or around September 2015, in Los Angeles County,

20  within the Central District of California, and elsewhere, defendant,

21  while employed by Anthem as a Senior Investigator, promoted, managed,

22  established, and carried on a commercial bribery scheme in violation

23  of California Penal Code, section 641.3(a).  More specifically,

24  defendant corruptly solicited, accepted, and agreed to accept money,

25  that is, quarterly payments from Khadem, without Anthem's knowledge

26  or consent, in return for using and agreeing to use his position as

27  an Anthem Senior Investigator for Khadem's benefit in connection with

28

8

health insurance claims Khadem, R&R Med Spa, and their affiliated health care providers presented to Anthem for payment.

Defendant's job at Anthem was to investigate fraud and attempt to recover for Anthem funds that Anthem had paid based on fraudulent claims that health care providers had submitted to Anthem. At times, defendant's job required defendant to provide support to criminal investigations that were being conducted by local, state, or federal law enforcement agencies.

Beginning in approximately January 2010, without Anthem's knowledge or consent, defendant corruptly agreed to accept quarterly cash payments of $2,500 from Khadem in return for using his position and experience as an Anthem Senior Investigator for Khadem's benefit by providing her with advice regarding the future submission of health insurance claims by doctors affiliated with R&R Med Spa. In approximately January 2012, at defendant's request, Khadem increased the quarterly cash payments to $5,000. Defendant's commercial bribery scheme, and the payments from Khadem, continued through at least September 28, 2015.

In exchange for the payments by Khadem, defendant would advise Khadem about the coding of medical services to be billed to Anthem and other health care companies, including nerve conduction and allergy testing. Defendant provided advice regarding requests made by Anthem and other health care companies for medical records or additional information about claims submitted by R&R Med Spa. Defendant assisted Khadem with the credentialing of affiliated doctors employed at R&R Med Spa as Anthem preferred providers. Defendant used his telephone, a facility in interstate commerce, with the intent to promote, manage, establish, or carry on the above

commercial bribery scheme in violation of California Penal Code § 641.3(a), by providing the above advice and assistance through voice calls and text messages on a cellular telephone to Khadem, including the following:

On the dates set forth below, defendant texted with Khadem to provide her with advice and assistance as described below:

| DATE | DESCRIPTION OF DEFENDANT'S TEXTS TO KHADEM |
|------|--------------------------------------------|
| 5/21/12 | Defendant told Khadem to ignore Anthem letters to two affiliated doctors (Doctors 1 and 2) at R&R Med Spa about claims submitted to Anthem. |
| 6/14/12 | Defendant told Khadem which medical codes to bill for EMG, a type of nerve conduction study |
| 9/13/12 | Defendant told Khadem which medical codes to bill for types of allergy testing |
| 3/27/13 | Defendant told Khadem how to respond to an Aetna request for medical records |

In addition, beginning on or around January 2, 2014, defendant received text messages on his cellular telephone from Tatiana Askarieh ("Askarieh") an R&R Med Spa employee, regarding the fact that Askarieh had submitted a request to Anthem to change the address of record of Doctor 3 who also worked at R&R Med Spa. On January 2, 2014, Askarieh sent defendant a text that stated, "Hi Hope you had a good new year eve. Can you let me know when you can check my doctor for me please." In response, defendant texted Askarieh "I am off this week hun. I can do it Monday. Is that ok?" The purpose of defendant's response was to inform Askarieh that he would inquire within Anthem about the status of the change of address for Doctor 3.

On January 7, 2014, from his Anthem email account, defendant emailed M.D., an Anthem Network Management Consultant, the following:

> I have an office manager who called me upset that it is taking too long to change her providers address.  She has submitted the new info, it's been over two weeks and still nothing. Can we do anything to expedite?

In response to defendant's email, M.D. emailed defendant on January 7, 2014, and stated, among other things, that M.D. could research the change of address request by referencing the provider's tax identification number and the approximate date the change of address request was submitted. Thereafter, defendant emailed the tax identification (social security number) of Doctor 3 to M.D.

In a text dated January 7, 2014, defendant stated to Askarieh "I sent the manager an email . . . I hope to hear from her soon."

Between January 8, 2014, and January 27, 2014, defendant and Askarieh texted multiple times about the status of the request to change Doctor 3's address with Anthem.

On January 27, 2014, defendant texted Askarieh a picture of his Anthem computer monitor that showed internal Anthem notes about the status of the requested address change for Doctor 3 and Anthem's need for an IRS Form W9 from the doctor.  On the same day, defendant emailed M.D. and asked "Any chance we can expedite this providers address change request? She just called me complaining that it is taking way longer than normal."  Defendant asked M.D. if defendant could obtain the documents needed by Anthem to process the change of address and forward them to M.D.  M.D. responded to defendant that once M.D. received the documents, M.D. would route the documents for processing within Anthem's system.

On January 28, 2014, defendant and Askarieh met. Askarieh gave defendant money from Khadem, which was based on the assistance defendant provided and would provide to Khadem, R&R Med Spa, and Askarieh regarding the address change for Doctor 3 with Anthem.

After the meeting, defendant texted Askarieh "My guy already forwarded the paperwork to the unit that handles the change of address . . . and put a rush on it."

On February 3, 2014, defendant texted Askarieh "The address is not changed yet. . . . I will get on them to do so . . ."

On February 6, 2014, Askarieh texted defendant "Please can you check with your source for the address change." Defendant texted in response "Just checked, not yet hun. . . Its at the processing unit so any day. . . ." In response, Askarieh asked defendant for the phone number of the processing unit, and then defendant texted "Internal unit hun. . . ." Askarieh texted "Can you please IF you can go there and see if they can change it today. Pleaee [sic]". Defendant responded "Ok hun, will try"

On February 10, 2014, defendant emailed M.D. "Office manager called asking when the address will be changed or if they needed anything else. . . ." Then, defendant texted Askarieh, "Gm hun, I sent the guy an email again this morning. . . . I haven't forgotten and am checking every day. . . .He will check with the other unit. . . ." Two hours later, defendant texted Askarieh "Great news hun. . . . Changed!"

On February 11, 2014, defendant received an email response from M.D. that stated the Anthem database had been updated with the new address.

Defendant later learned that Khadem wanted the address for Doctor 3 to be changed in Anthem's records to facilitate her ability to access the insurance payments being issued to Doctor 3 for services Khadem claimed had been provided by Doctor 3 at R&R Med Spa.

On or about September 28, 2015, defendant informed Khadem and Askarieh in person that R&R Med Spa was under federal investigation and advised Khadem to stop operations and close the business.

Between January 2010 and on or about September 28, 2015, defendant solicited and accepted cash payments from Khadem totaling between $60,000 and $75,000.

Defendant committed all of the above acts knowingly and with the specific intent to injure and defraud Anthem and to financially benefit himself.  Defendant abused a position of private trust in a manner that significantly facilitated the commission of the offense.

## SENTENCING FACTORS

11.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

12.   Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 8 | U.S.S.G. §§ 2B4.1(a), 2E1.2(a)(2) |
| Loss more than $40,000 but less than $95,000 | +6 | U.S.S.G. §§ 2B4.1(b)(1), 2B1.1(b)(1)(D) |
| Abuse of Trust | +2 | U.S.S.G. § 3B1.3 |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

13.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

14.   Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

15.   Defendant understands that by pleading guilty, defendant gives up the following rights:

a.   The right to persist in a plea of not guilty.

b.   The right to a speedy and public trial by jury.

c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

1          e.    The right to confront and cross-examine witnesses
2    against defendant.

3          f.    The right to testify and to present evidence in
4    opposition to the charges, including the right to compel the
5    attendance of witnesses to testify.

6          g.    The right not to be compelled to testify, and, if
7    defendant chose not to testify or present evidence, to have that
8    choice not be used against defendant.

9          h.    Any and all rights to pursue any affirmative defenses,
10   Fourth Amendment or Fifth Amendment claims, and other pretrial
11   motions that have been filed or could be filed.

12                   WAIVER OF STATUTE OF LIMITATIONS

13        16.  Having been fully advised by defendant's attorney regarding
14   application of the statute of limitations to the offense to which
15   defendant is pleading guilty, defendant hereby knowingly,
16   voluntarily, and intelligently waives, relinquishes, and gives up:
17   (a) any right that defendant might have not to be prosecuted for the
18   offense to which defendant is pleading guilty because of the
19   expiration of the statute of limitations for that offense prior to
20   the filing of the superseding information alleging that offense; and
21   (b) any defense, claim, or argument defendant could raise or assert
22   that prosecution of the offense to which defendant is pleading guilty
23   is barred by the expiration of the applicable statute of limitations,
24   pre-indictment delay, or any speedy trial violation.

25                    WAIVER OF APPEAL OF CONVICTION

26        17.  Defendant understands that, with the exception of an appeal
27   based on a claim that defendant's guilty plea was involuntary, by
28   pleading guilty defendant is waiving and giving up any right to

15

appeal defendant's conviction on the offense to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

18.  Defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court, provided it is no more than statutory maximum specified above; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e)  (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

19.  The USAO agrees that, provided all portions of the sentence are at or below the statutory maximum specified above, the USAO gives up its right to appeal any portion of the sentence..

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

20.  Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a

16

claim and finding that entry into this plea agreement was involuntary, then the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was dismissed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

<u>RESULT OF VACATUR, REVERSAL OR SET-ASIDE</u>

21.  Defendant agrees that if the count of conviction is vacated, reversed, or set aside, both the USAO and defendant will be released from all their obligations under this agreement.

<u>EFFECTIVE DATE OF AGREEMENT</u>

22.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

<u>BREACH OF AGREEMENT</u>

23.  Defendant agrees that if defendant, at any time after the effective date of this agreement, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing.  If the USAO declares this

agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

24. Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was dismissed as a result of this agreement, then:

a. Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b. Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c. Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES
OFFICE NOT PARTIES

25.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

26.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 13 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

27.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to

fulfill all defendant's obligations under this agreement. Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

28. Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

<u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

29. The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

TRACY L. WILKISON
Acting United States Attorney

| | |
|---|---|
| _signature_ | 8/31/21 |
| VALERIE L. MAKAREWICZ | Date |
| Assistant United States Attorney | |

| | |
|---|---|
| _signature_ | 8/30/21 |
| GARY JIZMEJIAN | Date |
| Defendant | |

1                                                 8/30/21

  MARK HARDIMAN                                Date

  Attorney for Gary Jizmejian

2

3                    CERTIFICATION OF DEFENDANT

4      I have read this agreement in its entirety.  I have had enough

5 time to review and consider this agreement, and I have carefully and

6 thoroughly discussed every part of it with my attorney.  I understand

7 the terms of this agreement, and I voluntarily agree to those terms.

8 I have discussed the evidence with my attorney, and my attorney has

9 advised me of my rights, of possible pretrial motions that might be

10 filed, of possible defenses that might be asserted either prior to or

11 at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

12 of relevant Sentencing Guidelines provisions, and of the consequences

13 of entering into this agreement.  No promises, inducements, or

14 representations of any kind have been made to me other than those

15 contained in this agreement.  No one has threatened or forced me in

16 any way to enter into this agreement.  I am satisfied with the

17 representation of my attorney in this matter, and I am pleading

18 guilty because I am guilty of the charge and wish to take advantage

19 of the promises set forth in this agreement, and not for any other

20 reason.

21

22   GARY JIZMEJIAN                     Date   8/30/21

  Defendant

23

24              CERTIFICATION OF DEFENDANT'S ATTORNEY

25      I am GARY JIZMEJIAN's attorney.  I have carefully and thoroughly

26 discussed every part of this agreement with my client.  Further, I

27 have fully advised my client of his rights, of possible pretrial

28 motions that might be filed, of possible defenses that might be

1  asserted either prior to or at trial, of the sentencing factors set

2  forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

3  provisions, and of the consequences of entering into this agreement.

4  To my knowledge: no promises, inducements, or representations of any

5  kind have been made to my client other than those contained in this

6  agreement; no one has threatened or forced my client in any way to

7  enter into this agreement; my client's decision to enter into this

8  agreement is an informed and voluntary one; and the factual basis set

9  forth in this agreement is sufficient to support my client's entry of

10  a guilty plea pursuant to this agreement.

11

12  MARK HARDIMAN
     Attorney for Defendant Gary
13  Jizmejian

                                          8/30/21
                                          Date

22

Exhibit A

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 18-00288(A)-SVW-(2) |
| Plaintiff, | F I R S T |
| v. | S U P E R S E D I N G |
| | I N F O R M A T I O N |
| GARY JIZMEJIAN, | [18 U.S.C. § 1952(a)(3): Use of a |
| Defendant. | Facility in Interstate and Foreign |
| | Commerce in Aid of Unlawful |
| | Activity] |

The Acting United States Attorney charges:

[18 U.S.C. § 1952(a)(3)]

A.    INTRODUCTORY ALLEGATIONS

1.    At times relevant to this First Superseding Information:

a.    Defendant GARY JIZMEJIAN was employed in Woodland Hills, California, by Anthem Blue Cross ("Anthem"), a health insurance company, as a Senior Investigator in Anthem's Special Investigations Unit.

b.    Defendant JIZMEJIAN's job responsibilities included investigating fraud and attempting to recover for Anthem funds that Anthem paid based on fraudulent claims that health care providers submitted to Anthem.

1            c.    Roshanak Khadem ("Khadem") was the owner of R&R Med

2    Spa.  Khadem submitted health insurance claims to Anthem for payment

3    for services allegedly provided by doctors affiliated with Khadem and

4    R&R Med Spa.  R&R Med Spa employee, Tatiana Askarieh ("Askarieh") was

5    an employee of R&R Med Spa.  Askarieh worked at the direction of and

6    was supervised by Khadem.

7    B.   THE COMMERCIAL BRIBERY SCHEME

8        2.   Beginning in or about January 2010, and continuing until in

9    or about September 2015, in Los Angeles County, within the Central

10   District of California, and elsewhere, defendant JIZMEJIAN promoted,

11   managed, established, and carried on a commercial bribery scheme, in

12   violation of California Penal Code Section 641.3(a).  More

13   specifically, defendant JIZMEJIAN solicited, accepted, and agreed to

14   accept quarterly payments from Khadem in return for using and

15   agreeing to use defendant JIZMEJIAN's position as an Anthem Senior

16   Investigator for Khadem's benefit in connection with health insurance

17   claims Khadem, R&R Med Spa, and their affiliated health care

18   providers presented to Anthem for payment.  In doing so, defendant

19   JIZMEJIAN acted corruptly and with the specific intent to injure or

20   defraud Anthem, and without Anthem's knowledge and consent.

21       3.   As part of the commercial bribery scheme, defendant

22   JIMEJIAN solicited and accepted a total of at least $60,000 in cash

23   payments from Khadem.

24   C.   USE OF FACILITY IN INTERSTATE COMMERCE

25       4.   On or about January 7, 2014, in Los Angeles County, within

26   the Central District of California, and elsewhere, defendant

27   JIZMEJIAN used a facility in interstate and foreign commerce, namely

28   a cellular telephone, with the intent to promote, manage, establish,

carry on, and facilitate the promotion, management, establishment and
carrying on of an unlawful activity, namely, the commercial bribery
scheme described above, an offense in violation of the laws of the
State of California, and thereafter performed an act to promote,
manage, establish, and carry on, and facilitate the promotion,
management, establishment and carrying on of said unlawful activity.
Specifically, on or about January 7, 2014, defendant JIZMEJIAN used
the cellular telephone to send a text message to Askarieh that stated
"I sent the manager an email . . . I hope to hear from her soon."
regarding Askarieh's request to change an address of an R&R Med Spa
doctor in Anthem's database, and thereafter sent another email to
Anthem's manager asking for priority for the address change request.

TRACY L. WILKISON
Acting United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

RANEE A. KATZENSTEIN
Assistant United States Attorney
Chief, Major Frauds Section

MONICA E. TAIT
Assistant United States Attorney
Deputy Chief, Major Frauds Section

VALERIE L. MAKAREWICZ
Assistant United States Attorney
Major Frauds Section